# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

PROPERTY DESCRIBED AS: CELLCO PARTNERSHIP DBA VERIZON WIRELESS PREMISES LOCATED AT 180 WASHINGTON VALLEY RD, BEDMINSTER, NJ, 07921, OR ANY SERVERS, SYSTEMS OR DATA STORAGE CENTER STORING INFORMATION FOR 480-341-4245 ) ) ) ) ) ) )

Case No. 20 M 724

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

Property described as: Cellco Partnership DBA Verizon Wireless, located at 180 Washington Valley Rd, Bedminster, NJ, 07921, and more particularly described as Verizon servers, systems and data storage centers holding the data for the cellular number 480-341-4245 described in Attachment A, incorporated herein.

over which the Court has jurisdiction pursuant to Title 18, United States Code, Sections 2703 and 2711, there is now concealed:

See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: which constitutes evidence of Title 21, United States Code, Sections 841 and 846, and Title 18, United States Code, Sections 1956 and 1957, conspiracy to distribute and possession with intent to distribute controlled substances and associated money laundering crimes.

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ (give exact ending date if more than 30 days): _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet and affidavit.

9/11/2020
11:00 AM

_Applicant's signature_

Jeremiah M. Winscher, DEA TFO
_Printed Name and Title_

Attested to by the applicant in accordance with the requirements of Fed. R. Crim P. 4.1 by TELEPHONE (specify reliable electronic means):

Date: 9/11/2020

_Judge's signature_

City and State: Green Bay, Wisconsin

JAMES R. SICKEL, U.S. Magistrate Judge
_Printed Name and Title_

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

*In the matter of the Search of:*

PROPERTY DESCRIBED AS: CELLCO PARTNERSHIP DBA VERIZON WIRELESS PREMISES LOCATED AT 180 WASHINGTON VALLEY RD, BEDMINSTER, NJ, 07921, OR ANY SERVERS, SYSTEMS OR DATA STORAGE CENTER STORING INFORMATION FOR 480-341-4245

Case No. 20 M 724

**Filed Under Seal**

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Jeremiah Winscher, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises owned, maintained, controlled, or operated by Cellco Partnership DBA Verizon Wireless, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, NJ, 07921; more specifically the account associated to cellular number **480-341-4245** (referred to herein and in Attachment A and B as "**TARGET TELEPHONE**"). The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Cellco Partnership DBA Verizon Wireless to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2. I am a Special Agent (SA) with the WI DOJ – Division of Criminal Investigation (DCI) and currently assigned and deputized as a Task Force Officer (TFO) with the US DOJ – Drug Enforcement Administration (DEA). I have been a law enforcement officer in Wisconsin since 2007, initially as a Wisconsin State Patrol Trooper and since 2011 as a SA with the WI DOJ DCI working primarily in narcotics investigations, and a TFO with the DEA since March of 2018 working in narcotics investigations at the state and federal level. During my time as a law enforcement officer, I received instruction on how to conduct criminal investigations, which included training in narcotics investigations at the state and federal level. I am also familiar with the exploitation of technical and electronic matters related to phone records,

cellular telephone devices and other technical data, have received similar requested records in the past and found them to be valuable evidence in criminal investigations such as this.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(a) and 846 and Title 18 United States Code, Sections 1956 and 1957 have been committed by Levi BAGNE and others known and yet to be identified. There is also probable cause to search the information described in **Attachment A** for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in **Attachment B**.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6. The United States, including the Drug Enforcement Administration, Federal Bureau of Investigation, US Postal Inspection Service and assisting local law enforcement agencies, are conducting a criminal investigation of Levi BAGNE, Cory FREYERMUTH, Krista SPARKS, Amy PEHLKE, Nicole ELSHOLTZ, Tim SLOZES, Melissa LOFGREN, Matt WHITE and others both known and yet to be identified regarding possible violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(a) and 846 and Title 18 United States Code, Sections 1956 and 1957; conspiracy to distribute and possession with intent to distribute controlled substances and associated money laundering crimes.

7. In August of 2019 Brian CLARK was arrested by local authorities in the Wausau, WI, area for possession of methamphetamine. Follow up investigation identified Cole WATSON as CLARK's supplier. WATSON was subsequently arrested in possession of a large quantity of methamphetamine. Additional follow up investigation revealed Levi BAGNE and Cory FREYERMUTH as WATSON's suppliers with FREYERMUTH residing in the Eastern District of Wisconsin and BAGNE in Arizona. BAGNE's cellular number was identified as 602-632-3900 and FREYERMUTH's as 920-410-2093.

2

8. Over the course of this investigation, law enforcement has continued to monitor various telephone numbers and their associated call detail records. The investigation to date has included traditional law enforcement methods, including, but not limited to: interviews with confidential sources and sources of information; information from other law enforcement officers; documentary evidence; pen register, trap and trace, and telephone toll data; controlled buys of drugs, GPS devices on vehicles, recorded telephone calls with targets, physical surveillance, parcel seizures, search and seizure warrants and court-authorized monitoring of several cellular telephones used by drug trafficking organization members to facilitate their drug trafficking activities with each other and their associates. These methods have resulted in the discovery of evidence of the crimes outlined in this affidavit as well as corroborating evidence of principle co-conspirator activities supporting the evidence collected.

9. Law enforcement began surveillance operations and observed, on a number of occasions between September 2019 and present, Central Wisconsin suspects travel to Oshkosh or Stevens Point and meet with or in the general area where FREYERMUTH was suspected of supplying BAGNE's methamphetamine to the traveling party. Phone records corroborated that the traveling party, Amy PEHLKE, Nicole ELSHOLTZ, or Matt WHITE were in phone contact with BAGNE, who was in turn in phone contact with FREYERMUTH, before and during the identified trips.

10. PEHLKE has been associated to numerous trips from the Western District of Wisconsin into the Eastern District of Wisconsin on September 7, September 11, September 13, September 16, November 15, December 10, December 20 and December 31, 2019, January 4, January 10, January 30, June 6, June 7, 2020. PEHLKE also traveled to Stevens Point on June 8, June 9, June 11, June 12, June 15, June 20, July 11, and July 23rd, 2020. This corroboration was made in the form of physical surveillance and/or GPS monitoring of vehicles and or cellular phones. On some of the aforementioned dates, I, or other law enforcement officers have observed Cory FREYERMUTH appearing to place an item inside the traveling vehicle prior to it departing a short time later.

11. Surveillance efforts have also shown that Cory FREYERMUTH, often accompanied by Melissa LOFGREN, will travel to Wells Fargo and make deposits in the drive through deposit box. Records obtained from Wells Fargo show said deposits are directly into the accounts of Levi BAGNE or his associate Krista SPARKS. This is confirmed by bank records as well as obtained surveillance footage. It has been further identified that FREYERMUTH, or LOFGREN, will convert cash to cashier's check payable to associates of BAGNE.

12. Law enforcement identified numerous parcels shipped via USPS originating out of Arizona and being shipped to the Eastern and Western Districts of Wisconsin; two of which were seized by law enforcement. A seized parcel in November of 2019 contained two packages of suspected methamphetamine

3

weighing 469.9 and 487.1 grams. BAGNE and SPARKS were linked to this parcel. A seized parcel in February of 2020 contained packages of suspected methamphetamine weighing 1126.5 grams and 688.3 grams. BAGNE and SPARKS were both linked to this parcel as well. Both seized parcels were destined for the known address of FREYERMUTH at 458 W 5th Ave in Oshkosh, Wisconsin, which is also the subscriber address to FREYERMUTHS 920-410-2093 number and is in the Eastern District of Wisconsin.

13. In addition to BAGNE's known number of 602-632-3900, an additional number was identified to be used by BAGNE of 715-218-2893. A number of search and seizure warrants were authorized by this court to capture historical text message content from 715-218-2893 which showed BAGNE communicating with FREYERMUTH, PEHLKE, WHITE and others about drug trafficking activity. BAGNE was shown to coordinate with customers from Central Wisconsin to travel to Oshkosh or Stevens Point to pick up methamphetamine from Cory FREYERMUTH. The traveling customer would not have direct contact with FREYERMUTH, but rather BAGNE would act as the intermediary between the customer and FREYERMUTH who would then supply BAGNE's meth to the customer at BAGNE's direction. Additional content showed further conversations between BAGNE and FREYERMUTH regarding the transfer of assets, which as identified previously, are commonly filtered through Wells Fargo bank accounts belonging to BAGNE or his associate SPARKS.

14. Levi BAGNE has been shown to travel to Wisconsin and has been surveilled by investigators in both the Eastern and Western Districts of Wisconsin. As an example, BAGNE was shown to come to Wisconsin in late February through early March of 2020. This was in close proximity of the seized parcel discussed in paragraph 12. Surveillance showed BAGNE meeting with PEHLKE at a gas station in Stevens Point and then traveling to Oshkosh where BAGNE was shown to meet with FREYERMUTH. Additionally, surveillance showed BAGNE in the Eastern District of Wisconsin on June 10, 2020 whereas BAGNE and FREYERMUTH were seen together. BAGNE departed a couple of days later in a rental vehicle which was rented in Phoenix on June 6, 2020, and returned in Phoenix on June 13, 2020. I further note that obtained text message content from BAGNE's 715-218-2893 number suggested BAGNE drove methamphetamine from Arizona to Wisconsin. I further note that since departing Wisconsin BAGNE's number of 715-218-2893 has ceased activity and BAGNE's other number 602-632-3900 was terminated due to non-payment on or around June 18, 2020. Based on my training and experience it is not uncommon for those involved in drug trafficking to change their phone number in an attempt to disguise themselves from law enforcement detection.

15. Through analysis of phone records, including those of FREYERMUTH, PEHLKE, and WHITE a new phone number was observed starting on June 14, 2020, shortly after BAGNE returned the vehicle discussed in paragraph 14. This new number was identified as 904-254-4988. I filed an

administrative subpoena for 904-254-4988 and discovered that the first three calls made upon its activation on June 14, 2020 were to Matt WHITE, Amy PEHLKE and Cory FREYERMUTH. Additionally, the numbers that 904-254-4988 contacts after activation on June 14, 2020 have been previously associated to this investigation as principle co-conspirators. Further analysis of 904-254-4988 in reference to PEHLKE's identified trips to Stevens Point after 904-254-4988 account was opened on June 14, 2020 show a familiar call pattern associated with prior patterns identified as drug transaction travels.

16. On June 15, 2020, a date PEHLKE's number is shown to travel to Stevens Point, 904-254-4988 is shown to have numerous back and forth contacts with Matt WHITE, Amy PEHLKE and Cory FREYERMUTH. This pattern holds true on June 20 and July 23rd as well. Phone records for WHITE and PEHLKE show they do not have contact with FREYERMUTH. Based on this investigation, it is believed that BAGNE is coordinating for FREYERMUTH to deliver BAGNE's methamphetamine to Central Wisconsin customers while communicating with FREYERMUTH and the traveling party.

17. On, or around, July 17, 2020, this court authorized a pen register/trap and trace device as well as the collection of historical and prospective location information for the phone number of FREYERMUTH; 920-410-2093. Additionally, this court also authorized a pen register/trap and trace device on 904-254-4988 on, or around, July 22, 2020. Since then FREYERMUTH has been shown to travel from the Eastern District of Wisconsin (Oshkosh) to Stevens Point on July 18, July 23rd, July 27th, July 31st, August 5th, August 10th, August 29th, and September 4th, 2020 During each of these aforementioned travels, I monitored pen register/trap and trace activity of FREYERMUTH's phone number and that of 904-254-4988. FREYERMUTH was in repeated contact with 904-254-4988 and/or an additional number known for BAGNE, **TARGET TELEPHONE**. Obtained records for Matt WHITE show he was also in contact with 904-254-4988 on July 18th, July 23rd, July 27th, July 31st, August 5th, August 10th, August 29th and September 4th. Furthermore, court authorized and obtained location information places WHITE in Stevens Point during similar time periods as FREYERMUTH. Additionally, on July 23, PEHLKE also traveled to Stevens Point and was in communication with 904-254-4988 and in a location similar to that as FREYERMUTH. Physical surveillance conducted on August 5th and August 10th confirm WHITE and FREYERMUTH meeting in a discrete location in Stevens Point after surveillance showed FREYERMUTH at a local storage unit, believed to be accessing BAGNE's meth. In each of the aforementioned instances, it is believed WHITE and/or PEHLKE communicated with in order to procure methamphetamine and in turn BAGNE communicated with FREYERMUTH in order to facilitate the delivery to WHITE and/or PEHLKE.

18. I also know that on July 23, 2020, Central Wisconsin investigators were able to locate PEHLKE departing Stevens Point and returning north towards Wausau, Wisconsin. A traffic stop was conducted which resulted in the seizure of two vacuum sealed bags of a substance that later field tested

5

positive for the presence of methamphetamine, weighing approximately 232.37 grams and 232.63 grams respectively. Investigators interviewed PEHLKE who admitted to possessing the methamphetamine and obtaining it in Stevens Point in a "dead-drop" style manner, consistent with intelligence obtained during this investigation.

19. Furthermore, on July 24th, 2020, the day after it is suspected WHITE received BAGNE's meth from FREYERMUTH, central Wisconsin investigators conducted a controlled purchase of approximately 16 grams of methamphetamine from WHITE utilizing CS2. On July 28th, 2020, the day after it was suspected WHITE received BAGNE's meth from FREYERMUTH, central Wisconsin investigators conducted a controlled purchase of approximately 93 grams of methamphetamine from WHITE.

20. Since BAGNE terminated the usage of 715-218-2893 and 602-632-3900 as mentioned in paragraph 14, and in addition to a new number of 904-254-4988 being observed on toll records of known suspects after the aforementioned numbers were terminated, I also observed an additional new number appear on pen register/trap and trace data and toll records of FREYERMUTH, and others, which has been identified as **TARGET TELEPHONE**. I subpoenaed Verizon for toll records of **TARGET TELEPHONE** and discovered the number was activated on, or around, June 17th, 2020, which is approximately the same time frame whereas BAGNE terminated use of 602-632-3900. This is also the same time frame BAGNE terminated usage of 715-218-2893 and began using 904-254-4988. As previously mentioned, I know it is common for those involved in the drug trafficking business to change numbers, as well as use multiple numbers, in order to avoid law enforcement detection.

21. I have reviewed the toll records of **TARGET TELEPHONE** and found it communicates with many of the same numbers and in similar frequencies to that of BAGNE's former 602-632-3900 number, indicating that the user of **TARGET TELEPHONE** is likely the same user as 602-632-3900; Levi BAGNE. Subscriber records for **TARGET TELEPHONE** show a subscriber of "Ryan Johnson" at 7101 N 36th Ave in Phoenix, AZ; which is an address that is associated to BAGNE. Historical information for 904-254-4988, a number known to be used by BAGNE, suggests that BAGNE traveled to Wisconsin on June 20th, 2020 as well as between July 10th and 13th, 2020. On each of those date ranges, toll records for **TARGET TELEPHONE** show calls to local Wisconsin businesses and hotels suggesting that **TARGET TELEPHONE** was also in the possession of BAGNE. I also know that on instances where it has been shown FREYERMUTH traveled from the Eastern District of Wisconsin to Stevens Point to meet with Central Wisconsin customers of BAGNE, FREYERMUTH is in communication with not only 904-254-4988 but also with **TARGET TELEPHONE**. Furthermore, on August 21, 2020, investigators discovered that BAGNE flew from Arizona to the Eastern District of Wisconsin and was picked up at the airport by

6

FREYERMUTH. I reviewed surveillance footage from the airport noting that BAGNE's 904-254-4988 was turned off, and observed BAGNE placing a cellular phone to his ear at approximately 9:22 PM as BAGNE was walking out to the parking lot looking for a vehicle. Pen register/trap and trace data showed FREYERMUTH received a call from **TARGET TELEPHONE** at about that same time. While BAGNE was in the Eastern District of Wisconsin BAGNE was shown to travel with FREYERMUTH to a local Uhaul Storage Unit facility. I subpoenad records for Uhaul and discovered BAGNE rents a unit and lists TARGET TELEPHONE as a contact number. BAGNE also met with Matt WHITE in Wittenberg for a short duration of time on August 22, 2020. BAGNE returned to the Phoenix area in the forthcoming days.

22. I believe BAGNE is using at least 2 cellular phone, 904-254-4988 as well as **TARGET TELEPHONE**. I know it is common for those involved in drug trafficking to use multiple phones to obfuscate their drug trafficking activity; commonly communicating with customers on one line and sources on the other.

23. On or around August 27, 2020, I served a search warrant and pen register order authorized by this court to Verizon for **TARGET TELEPHONE**. Historical location and historical text message content as well as prospective location information were authorized and received as a result. I have reviewed the historical text message content received which show BAGNE clearly communicating with FREYERMUTH about past drug transactions, money laundering activity as well with suspected sources of BAGNE. These suspected sources have yet to be fully identified.

24. I have also previously served search warrants to Verizon for BAGNE's 904-254-4988 number and received historical location, text message content and prospective location information. These orders were also authorized by this court. I reviewed historical text message content which corroborate past drug transactions with PEHLKE, WHITE and FREYERMUTH, facilitated by BAGNE as well as the trip to Wittenberg on August 22, 2020. Messages indicate Wittenberg trip was a meeting to obtain money for a future planned trip to Wisconsin with contraband.

25. On August 28, 2020, pursuant to orders authorized by this court in regards to **TARGET TELEPHONE**, I was able to determine that BAGNE had departed Arizona and was traveling east towards Wisconsin. Surveillance was established at 123 Storage in Stevens Point on August 29, 2020 whereas investigators were able to observe BAGNE arrive in a rented vehicle from Hertz (of which Hertz records confirm was rented by BAGNE). While at the storage unit investigators observed BAGNE appear to drop the spare tire which was then placed in unit 17. BAGNE was observed closing unit 17 and departing to meet with FREYERMUTH at a Stevens Point hotel where they stayed overnight. FREYERMUTH came to Stevens Point from the Eastern District of Wisconsin. Additionally, court authorized monitoring of the cellular phone locations of both BAGNE and WHITE show a suspected meeting in Stevens Point on August

30, 2020. BAGNE and WHITE were in repeated contact during this duration on 904-254-4988. BAGNE departed Wisconsin and flew back to Phoenix on August 31, 2020.

26. On September 2, 2020, a Western District of Wisconsin federal warrant was executed at 123 Storage, unit 17. As a result of the warrant approximately 10 pounds of methamphetamine was seized from within the unit. Cut spare tires were also observed. This warrant was sealed and accompanied by a non-notification/delayed notice provision so that BAGNE was not notified that the meth was seized. On September 4, 2020, I observed telephonic contacts between BAGNE's 904-254-4988 number and WHITE as well as FREYERMUTH. I also observed FREYERMUTH and BAGNE contacting each other on **TARGET TELEPHONE**. Additionally, court authorized monitoring of FREYERMUTH's and WHITE's cellular phone locations showed FREYERMUTH and WHITE travel to Stevens Point for what is believed to be an intended drug transaction. FREYERMUTH traveled to Stevens Point from the Eastern District of Wisconsin and WHITE from the Western District. It is believed that this drug transaction did not occur because law enforcement in the Western District seized the stored meth from Unit 17 at 123 Storage in Stevens Point. Since the September 2, 2020 seizure and September 4, 2020 activity described previously in this paragraph, I have continued to observe telephonic contact between WHITE and BAGNE on 904-254-4988. Additionally, I have been made aware of recorded jail calls of Cole WATSON which corroborate the September 4, 2020 activity as an intended drug transaction. In one call, WATSON is made aware that his favorite pair of "pants" (ie Levi Jeans referring to Levi BAGNE) robbed WHITE of $10,000. I have also observed continued telephonic contact between **TARGET TELEPHONE** and FREYERMUTH, other numbers associated to FREYERMUTH and Melissa LOFGREN as well as numbers believed to be possibly BAGNE's source of supply in Arizona.

27. I have received and reviewed the historical text message content from both **TARGET TELEPHONE** and 904-254-4988 from prior warrants served to Verizon. Content from message on 904-254-4988 corroborated that BAGNE would arrive on Saturday (August 29, 2020) with "with quite a bit of good stuff". Message content from **TARGET TELEPHONE** showed significant historical conversation with FREYERMUTH about past transactions, money laundering as well as revealed possible sources of supply for BAGNE. Most notably, **TARGET TELEPHONE** is communicating with 602-832-9279 and 602-725-3626 asking for "5 maybe 10" as well as trading guns for meth. These historical conversations were between August 21, 2020 and August 26, 2020; shortly before BAGNE traveled to Wisconsin as described in paragraph 25. I further note that **TARGET TELEPHONE** remains active and currently contacts suspected co-conspirators or source numbers as current as September 10, 2020.

28. I know that BAGNE is a resident of Arizona, however, has traveled to Wisconsin on a number of occasions, including to the Eastern District of Wisconsin. I know that in order for BAGNE's

8

methamphetamine to make it to Wisconsin, USPS parcels and personal transportation have been used. It is unconfirmed at this time where BAGNE procures the methamphetamine and it is believed that receiving the information requested in this affidavit, including text message content, historical location information, will facilitate the seizure of additional evidence supporting this investigation including possible suppliers, stash locations and also confirm user attribution for **TARGET TELEPHONE** and past drug transactions conducted over text message. Due to the fact that different means of drug transportation have been identified it is also believed that the information requested will facilitate law enforcement's ability to locate and seize additional contraband.

29. Both **TARGET TELEPHONE** and 904-254-4988 remain active at this time and have been shown to be used by BAGNE for the purposes of facilitating drug transactions; either with his customers or his supplier/s. Notably, both **TARGET TELEPHONE** and 904-254-4988 remain in contact with known drug trafficking co-conspirators and due, in part, to this I believe that receiving the requested information will result in the seizure of additional evidence.

30. In regards to a confidential source (herein after referred to as CS1) who has provided information, I have spoken to the CS1's handling agents, whom I believe to be truthful and reliable, and been advised as follows. CS1 is cooperating with law enforcement for consideration on pending felony and misdemeanor charges and also for financial considerations. CS1 has provided accurate and truthful information since the commencement of CS1's cooperation in approximately December of 2019. CS1 has been convicted of multiple misdemeanor and felony charges including drug offenses, misappropriation offenses, bail jumping and criminal traffic offenses. During the time of CS1's cooperation CS1 conducted a controlled purchase of methamphetamine from Nicole ELSHOLTZ on January 2, 2020 of approximately 29.9 grams after ELSHOLTZ was observed meeting with FREYERMUTH in the Eastern District of Wisconsin, a controlled purchase of methamphetamine from Nicole ELSHOLTZ on January 14, 2020 of approximately 42.2 grams, a controlled purchase of methamphetamine from Tim SLOZES on February 4, 2020 of approximately 83.96 grams after SLOZES departed from Amy PEHLKE's residence, a controlled purchase of methamphetamine from Amy PEHLKE on May 4, 2020 of approximately 15.5 grams. Information provided by CS1 has been independently corroborated by investigators through means of physical and technical surveillance and other traditional investigative means and is not known to handling agents to have provided any false or misleading information when questioned. CS1 has been up front with handling agents about CS1's drug dependency issues and challenges. For these reasons, I consider CS1 to be reliable.

31. In regards to a confidential source (herein after referred to as CS2) who has provided information, I have spoken to the CS2's handling agents, whom I believe to be truthful and reliable, and

9

been advised as follows. CS2 is cooperating with law enforcement for consideration on pending felony charges and also for financial considerations. CS2 has provided accurate and truthful information since the commencement of CS2's cooperation during the 1st quarter of 2020. CS2 has been convicted of multiple misdemeanor and felony charges including drug offenses, bail jumping and resisting/obstructing an officer. As previously described in paragraph 19, CS2 has participated in controlled buys of methamphetamine from Matt WHITE. Information provided by CS2 has been independently corroborated by investigators through means of surveillance and other traditional investigative means and is not known to handling agents to have provided any false or misleading information when questioned. CS2 has been up front with handling agents about CS2's drug dependency issues and challenges. For these reasons, I consider CS2 to be reliable.

32. I have filed a preservation request for text message content with Verizon.

33. In my training and experience, I have learned that Cellco Partnership DBA Verizon Wireless is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and un-retrieved voicemail, text, and multimedia messages for Cellco Partnership DBA Verizon Wireless subscribers may be located on systems under the control of Cellco Partnership DBA Verizon Wireless. Further, I am aware that systems under the control of Cellco Partnership DBA Verizon Wireless information and other stored electronic communications belonging to unrelated third parties. Most notably I am aware that Cellco Partnership DBA Verizon Wireless stores the contents of text messages for a short duration of time which can be made available to law enforcement inspection with a search warrant.

34. I believe that receiving the requested records will produce additional evidence of the crimes outlined in this affidavit; cellular voice and text messages details showing communications between co-conspirators, and text message content providing direct evidence of the crimes under investigation as well as user attribution.

35. Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by Cellco Partnership DBA Verizon Wireless for short periods incident to and following their

10

transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

36. Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

37. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

38. Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question. Additionally, many providers maintain other records which store location information including GPS latitude and longitude, cellular site/sector/ranging information as well as other precision location information.

39. Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the

11

subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates, times and sometimes, places, of payments and the means and source of payment (including any credit card or bank account number).

40. In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

41. As explained below, information stored at the wireless provider, including that described above, may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the data pertaining to a particular cellular device that is retained by a wireless provider can indicate who has used or controlled the cellular device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, data collected at the time of account sign-up, information relating to account payments, and communications (and the data associated with the foregoing, such as date and time) may indicate who used or controlled a cellular device at a relevant time. Further, such stored electronic data can show how and when the cellular device and associated cellular service were accessed or used. Such "timeline" information allows investigators to understand the chronological context of cellular device usage, account access, and events relating to the crime under investigation. This "timeline" information may tend to either inculpate or exculpate the cellular device owner. Additionally, information stored by the wireless provider may indicate the geographic location of the cellular device and user at a particular time (e.g., historic cell-site location information; location integrated into an image or video sent via text message to include both metadata and the physical location displayed in an image or video). Last, stored electronic data may provide relevant insight into the state of mind of the cellular device's owner and/or user as it relates to the offense under investigation. For example, information relating to the cellular device in the possession of the wireless provider may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

12

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

42. I anticipate executing this warrant under the Federal Rule of Criminal Procedure 41 and Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Cellco Partnership DBA Verizon Wireless to disclose to the government copies of the records and other information (**including the historical content of communications**) particularly described in **Section I of Attachment B**. Upon receipt of the information described in **Section I of Attachment B**, government-authorized persons will review that information to locate the items described in **Section II of Attachment B**.

## CONCLUSION

43. Based on the forgoing, I request that the Court issue the proposed search warrant.

44. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

45. The government will execute this warrant by serving the warrant on Cellco Partnership DBA Verizon Wireless. Because the warrant will be served on Cellco Partnership DBA Verizon Wireless, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

46. I further request, pursuant to 18 U.S.C. §§ 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until six months after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of **TARGET TELEPHONE** would seriously jeopardize the ongoing investigation, as such disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates and flee from prosecution. I anticipate this investigation will continue for many more months warranting the requested delayed notice time period.

## REQUEST FOR SEALING

47. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.

Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

9/11/2020 11:00 AM

Jeremiah Winscher
Task Force Officer
Drug Enforcement Administration

Sworn and attested to me by reliable electronic means pursuant to the requirements of Fed. R. Crim. P. 4.1 (TELEPHONE) on September 11, 2020

JAMES R. SICKEL, United States Magistrate Judge

14

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the cellular number **480-341-4245** (referred to herein and in Attachment B as "**TARGET TELEPHONE**") that is stored at premises owned, maintained, controlled, or operated by Cellco Partnership DBA Verizon Wireless, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, NJ, 07921.

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be disclosed by Cellco Partnership DBA Verizon Wireless**

To the extent that the information described in Attachment A is within the possession, custody, or control of Cellco Partnership DBA Verizon Wireless, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or information that have been deleted but are still available to Cellco Partnership DBA Verizon Wireless or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Cellco Partnership DBA Verizon Wireless is required to disclose the following information to the government for "**TARGET TELEPHONE**" listed in Attachment A:

    a.    All Text Message Content, SMS Message Content, MMS Message Content and Multimedia Message Content (including photographs if available) **August 28, 2020 through September 10, 2020** stored and presently contained in, or on behalf of "**TARGET TELEPHONE**" or identifier;

    b.    All existing printouts from original storage of all of the text messages described above as well as message header and content in electronic format (if available);

    c.    All text messaging logs, including date and time of messages, and identifications numbers associated with the handsets sending and receiving the messages from ) **August 28, 2020 through September 10, 2020**;

    d.    All business records and subscriber information, in any form kept, pertaining to "**TARGET TELEPHONE**" and/or identifiers, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device (including IMEI, MSID, IMSI), Social Security number, date of birth, telephone numbers, and other identifiers associated with "**TARGET TELEPHONE**";

**The Provider is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant and to provide the requested data in electronic format when reasonable and possible (formats such as .csv, .xls, .xlsx).**

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(a) and 846 and Title 18 United States Code, Sections 1956 and 1957 involving Levi BAGNE and others known and yet to be identified, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

    a. The possession of, possession with intent to distribute, distribution of or conspiracy to commit the same of illegal drugs, laundering of currency, assets or other items of value in support of the drug conspiracy, communication between co-conspirators, storage locations for contraband and locations demonstrating user attribution for acts included in the conspiracy as well as identification of other co-conspirators both identified and unidentified.

    b. Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crime under investigation;

    c. Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

    d. Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

    e. The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s).

    f. The identity of the person(s) who sent to and/or received communications from the cellular device about matters relating to violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(a) and 846 and Title 18 United States Code, Sections 1956 and 1957, including records that help reveal their whereabouts.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Cellco Partnership DBA Verizon Wireless, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Cellco Partnership DBA Verizon Wireless. The attached records consist of_____**[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Cellco Partnership DBA Verizon Wireless, and they were made by Cellco Partnership DBA Verizon Wireless as a regular practice; and

    b.    such records were generated by Cellco Partnership DBA Verizon Wireless electronic process or system that produces an accurate result, to wit:

        1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Cellco Partnership DBA Verizon Wireless in a manner to ensure that they are true duplicates of the original records; and

        2.    the process or system is regularly verified by Cellco Partnership DBA Verizon Wireless, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____   _____
Date                                        Signature

3